**VIVIANO MACARONI COMPANY,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 17264.

United States Court of Appeals
Third Circuit.

Argued Feb. 3, 1969.

Decided May 29, 1969.

William D. Matthews, Whitlock, Markey & Tait, Washington, D. C. (Edward T. Tait, Whitlock, Markey & Tait, Washington, D. C., on the brief), for petitioner.

E. K. Elkins, Atty., Federal Trade Commission, Washington, D. C. (James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, on the brief), for respondent.

Before KALODNER, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is a petition to review an order to cease and desist issued by the Federal Trade Commission (the Commission) based on its determination that petitioner, Viviano Macaroni Company (petitioner), has engaged in discriminatory practices prohibited by Sections 2(a), 2(d), and 2(e) of the amended Clayton Act, 15 U.S.C. §§ 13(a), 13(d), and 13 (e), in connection with its sale and distribution of macaroni products to wholesalers and retailers.

Petitioner is engaged in the manufacture and sale of macaroni products, egg noodles, prepared foods, and sauces and sells primarily in an area within 150 miles of its manufacturing facility at Carnegie, Pennsylvania. This area encompasses western Pennsylvania and parts of Ohio, West Virginia, New York, and Maryland. Viviano's gross sales from 1962 to 1965 fluctuated from 3 to 4 million dollars, and since the late 1950's the competition among the various macaroni companies in the relevant area has been intense.

Petitioner's primary position on this appeal is that the discriminations as found by the Commission were made in

good faith to meet competitive offers from rival macaroni companies. Such an affirmative defense is permitted by Section 2(b) of the Clayton Act to rebut a prima facie case of unlawful discrimination. Section 2(b) provides in pertinent part:

"* * * nothing * * * shall prevent a seller rebutting the prima facie case [of unlawful discrimination] by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

The United States Supreme Court elaborated the standard to be used in applying a Section 2(b) defense to a particular set of facts in its landmark decision, Federal Trade Commission v. A. E. Staley Mfg. Co., 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338 (1946), where it stated:

"Section 2(b) does not require the seller to justify price discriminations by showing that in fact they met a competitive price. But it does place on the seller the burden of showing that the price was made in good faith to meet a competitor's. * * *

"* * * the statute at least requires the seller, who knowingly discriminated in price, to show the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." at 759–760, 65 S.Ct. at 977.

It is in light of the above formulation that we will examine the merits of petitioner's Section 2(b) defense as applied to the individual cases of discrimination, to which we now turn.

### The Loblaw Transaction

In July of 1962 there was a change in the ownership and management of the All American Stamp and Premium Co. of New York which operated the Loblaw supermarkets. Up to that time, petitioner had been selling and delivering its products only to individual Loblaw stores. Loblaw, through its new management, indicated to several macaroni companies, including petitioner, that it was considering taking on a new macaroni line in its central warehouse for distribution to all its stores.

Accordingly, a meeting was arranged between John Dickson, Assistant Sales Manager of Loblaw, and Samuel Viviano of petitioner. It was held on January 2, 1963, and a second one was held later in the month. An agreement was reached with the following terms which were found by the Commission to constitute price discrimination in violation of Section 2(a) of the amended Clayton Act: (1) petitioner gave Loblaw free goods equal to the first two orders it placed for each of 29 of petitioner's products (the brand name is Vimco), without limit as to the size of the orders; (2) petitioner permitted Loblaw to pick up products at petitioner's plant and allowed it $1.69 per hundredweight on all invoices, including both purchases and free goods; (3) petitioner gave Loblaw throughout 1963 credit terms of 2%-20 days instead of its regular 2%-10 days; and (4) during the first seven months of 1963 petitioner gave Loblaw advance payment of allowances for which it would qualify under petitioner's regular merchandising programs.

In asserting its meeting competition defense to the above discriminations, petitioner claims to have met the statutory burden as elaborated by the Supreme Court in the Staley decision by showing that (1) Samuel Viviano knew enough about the nature of the competitive offers to establish a good faith reaction, based upon his 35 years of experience in the macaroni business and his knowledge of his competitors' prices, and (2) he knew the specific identity of the competitors whose offers petitioner was meeting and was not just reacting to a general competitive situation.

The Commission, in concluding that petitioner had failed to establish the defense, rejected much of Samuel Viviano's testimony, as well as that of the two Loblaw executives involved in the discussions with him, and characterized the transaction as "simply a situation of a large buyer attempting to get the best price it could from a seller who was willing to grant price concessions to obtain the business."

■ It is our function as an appellate court reviewing the Commission's findings to determine whether the findings are supported by substantial evidence in the record. A. G. Spaulding & Bros. v. Federal Trade Commission, 301 F.2d 585, 624 (3rd Cir. 1962). We have reviewed the record and find that there is substantial evidence to support the Commission's finding that petitioner failed to establish a valid Section 2(b) defense. Petitioner would have us make an independent re-evaluation of the record including reassessment of the credibility of certain witnesses. This is not our function. "The appraisal of the evidence and the inferences to be drawn from it are for the Commission, not the courts." Federal Trade Commission v. Staley Mfg. Co., supra, 324 U.S. at 760, 65 S.Ct. at 977.

What the Commission rejected, and what petitioner argues now is that Samuel Viviano acted in good faith in extending the discriminatory offer. While we can appreciate petitioner's difficulty in ascertaining the nature and extent of the rival offers, we think the Commission properly found on the record that Samuel Viviano was not acting to meet rival offers. We note in that connection the following testimony of Samuel Viviano:

Q. At the time you made this arrangement with Loblaw, did you have any understanding of how much this free goods arrangement would amount to?

A. We had none.

It is difficult for us to imagine that petitioner's offer was made in good faith to meet competition when Samuel Viviano had no idea of how much a significant part of his own offer was worth. He would have no way of comparing his offer with those of the rival macaroni companies in order to insure that his company was only making an equally low offer and not a lower one. It is clear to us from this and the findings of the Commission that petitioner's offer was made in an effort to obtain additional business from Loblaw and not to defend itself against the inroads of rapacious competitors.

■ Petitioner also argues with respect to the Loblaw transaction that since the prepayment of advertising allowances was part of the Loblaw price package, it should not have been the subject of a separate Section 2(d) violation.[1] It further argues with respect to the Loblaw 2(d) violations (involving other grocery chains) found by the Commission that its prepayment of advertising allowances was available nondiscriminatorily to all its customers. We think that it was entirely proper based upon the record for the Commission to consider the prepayment of advertising allowances as a separate violation and to find the 2(d) violations as it did.

### Fox Grocery Radio-TV Program

Fox Grocery Co. operates a wholesale grocery business in western Pennsylvania and up to 1963 carried petitioner's products, as well as Procino & Rossi's full line and a partial line of Mueller's macaroni products. In 1963, Fox officials approached Samuel Viviano and said that they wanted petitioner to participate in a radio–TV program which Fox was sponsoring and which featured products sold in Foodland Stores, a voluntary chain of independent supermarkets supplied by Fox. They said

---

1. Section 2(d) prohibits discriminatory promotional and related payments to customers (e. g. advertising payments).

that, if petitioner would not participate, Fox would make the offer to other macaroni companies. Viviano agreed to participate and did so through 1965. It was the only macaroni company participating, since to have more than one was poor advertising practice.

The Commission found the advertising payments made to Fox to be discriminatory and in violation of Section 2(d) of the amended Clayton Act. Petitioner argues that the promotional payments were made in good faith to meet competitive offers by Procino & Rossi and La Premiata. It claims that if it had declined to participate, the Fox account would have been lost. The Commission rejected the defense because petitioner failed to establish that it knew who its competitors were or that it knew the amount of the offer and because petitioner continued its participation for three years.

We have reviewed the record as it pertains to this transaction and find substantial evidence to support the Commission's findings. While we can again sympathize with the difficulty facing petitioner in finding precise information as to the identity of the competitors and the amount of offers, there is no indication in the record that Samuel Viviano did anything more than merely accept the word of the Fox official, William Kemper, as to there being competitive offers outstanding. Kemper testified as to having told Samuel Viviano: "We were offered by other companies before Vimco [petitioner] was contacted * * * we told them [petitioner] that we would like for them to buy a spot * * *. We were offered by other companies and we just laid the cards on the table." The Commission characterized such testimony as "vague and general," and we agree at least that it was not sufficient to justify the petitioner's participation without further investigation on its part. We think that it is clear from the Supreme Court opinion in Staley that petitioner was under a duty to investigate or verify the oral communication of Kemper as well as the reliability of Kemper himself in view of the "tendency of buyers to secure the most advantageous terms of sales possible." Staley, supra, 324 U.S. at 759, 65 S.Ct. at 977. Moreover, that duty continued throughout the period of the discriminatory payments. Therefore the fact that petitioner continued to participate for three years on an annually renewable contract, without making any further inquiries as to outstanding offers of other macaroni companies is further evidence that petitioner did not participate to stave off competition, but rather to accommodate a large customer.

### State Food Stores Radio Program

In late 1962, State Food Stores of West Virginia formed a radio program sponsoring products featured in its stores. Petitioner, who had the best-selling line of macaroni products in the stores, agreed to participate in the program, and the Commission found such participation to be in violation of Section 2(d) of the amended Clayton Act. Petitioner, asserting a Section 2(b) defense, claims that it agreed to participate in the program to stave off an inroad being made by San Giorgio, a rival company, and that it received reliable information of the attempted in-road from its long-time salesman, Curtis High. The Commission found that there was no outstanding competitive offer and that Samuel Viviano's failure to corroborate High's information showed a lack of good faith. Petitioner replies that Samuel Viviano was justified in relying upon the information transmitted to him by High in view of High's 18 years of service and the insignificance of the dollar amount involved.

We agree with the Commission that Viviano's failure to corroborate the information given by High showed a lack of good faith. We note that in Staley, supra, 324 U.S. at 759, 65 S.Ct. at 977 the Supreme Court affirmed the Commission's determination of lack of

good faith based, inter alia, "upon the entire lack of a showing of diligence on the part of respondents to verify the reports which they received * * *."

### The Other Alleged Errors

■ Petitioner suggests without any elaboration in its brief that the Commission committed innumerable, unidentified additional errors. To state the contention is to reject it.

### The Alleged Ex Parte Communication

■ The communication in issue is a report prepared by the Commission staff in the nature of an advisory opinion on the legality of the promotional program of Supermarket Broadcasting System, which provided background music with periodic advertisements to retail supermarkets and groceries. Petitioner participated in the program and was found as a result to be in violation of Section 2(e) of the amended Clayton Act. Petitioner claims that the failure of any members of the Commission who read the report (presumably all the participating members) to disqualify themselves was a denial of due process because the report was an ex parte communication. We find petitioner's argument to be without merit. In the first place, the communication was not ex parte because petitioner was sent a copy of the report and was given adequate opportunity to respond thereto. Furthermore, the communication could not have in any way prejudiced petitioner in view of its contents.

### The Cease and Desist Order

Petitioner takes exception to the form of the order issued by the Commission in that it defines "net price" and compels petitioner to perform many affirmative acts which are not justified under the circumstances of this case. Petitioner further maintains that the order is designed as a punishment for petitioner's having litigated the case, since the con-

sent decree proffered before the commencement of litigation which petitioner rejected did not include the objectionable sections.

■ The Commission has broad discretion in fashioning its orders and in the circumstances of this case has not abused this discretion. In the first place, petitioner makes no objection to the definition itself of "net price", only to the inclusion of any such definition in the order. We think the inclusion of such definition was justified by the many different forms the discriminations took in this case. It is highly desirable in such a situation to reduce the various forms of discrimination to a common denominator in order to prevent circumvention of the cease-and-desist order by subsequent disguised reductions in price.

■ Secondly, the mandatory part of the order does not compel petitioner to do any more than it should do in order to avoid further violations. If it does decide to offer certain terms which deviate from its previously announced standard terms, then it must, to comply with the order, affirmatively act to make the new terms available to all its customers. We do not think this is an unreasonable burden, nor do we think that having to notify "all other customers who compete, or whose customers compete" with the favored customers is an unreasonable requirement under the circumstances.

Finally, it is clear to us that the order does not preclude petitioner from asserting at some future time the meeting competition defense or other permissible defenses where they are appropriate, since there is an implied proviso in the order excepting from compliance with the mandatory section of the order discriminatory offers made in good faith to meet competition or for other legally justifiable reasons. See Federal Trade Commission v. Ruberoid, 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081 (1952); Moog Industries v. Federal Trade Com-

mission, 238 F.2d 43 (8th Cir. 1956), aff'd 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed. 2d 370 (1958).

The order of the Commission will be affirmed and enforced.